## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO
## CIVIL ACTION NO. 4:10CV-P91-M

MARTIN GORDON A/K/A ROBERT HILL                            **PLAINTIFF**

v.

DAVID OSBORNE, JAILER *et al.*                                 **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 against twenty-two defendants. The complaint and amended complaint are before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss most of Plaintiff's claims but will allow a few to proceed beyond initial screening for further development.

## I. SUMMARY OF CLAIMS

Plaintiff is a prisoner currently incarcerated at the Daviess County Detention Center (DCDC). Plaintiff avers in the complaint and amended complaint that when he was transferred to DCDC guards O'Bryan and Culver[1] searched and illegally seized all of his property, including medical soap, ointments, and pain and psychotropic medications. He states that Nurse Jim refused to allow him to have his medications. That night he was screened by Nurse Megan who also refused to provide him with the medications and ointments and told him that the doctor had to review his medications. In addition, Sergeant Jack Jones, a second Sergeant Jones, and Sergeant Burns also refused to give him his medications, personal property, commissary

---

[1]In the original complaint Plaintiff names as Defendant "Culvert," whom he identifies as a guard at DCDC. In the amended complaint, he names as Defendant "Culver," whom he also identifies as a guard. For the purposes of initial review, the Court will consider these as the same Defendant and identify him as Culver.

property, and legal property. Plaintiff states that he filed grievances which were denied by Captain Billings.

Approximately a week later he received pain medication and psychotropic medication but was refused his antibacterial soap and ointment because the institution sells the soap at commissary and no ointments are allowed. Plaintiff states that later all of his pain and psychotropic medications were discontinued by the medical staff. In response to a grievance, he was told that the reason for discontinuing the medications was a "lie that I 'had complained about having gastrointestinal distress.'" He states that he has doctors' orders for all medications, soaps, and ointments. Plaintiff states that Nurses Leeanne, Virginia, and Jim, and Southern Health Partners denied him these medications and did not allow him to see a doctor or psychiatrist. Morever, Plaintiff states that Captain Billings, Jailer Osborne, Sergeants Burns, Ankrom, Corporal Howard, Sergeant Elshire,[2] and guards Sarah Coffman and Culver denied him the medications and refused to allow him to see a psychiatrist. Plaintiff claims that this is a violation of the Fourth, Fifth, and Fourteenth Amendments.

Plaintiff also states that he has two civil rights claims pending and that Osborne, Billings, Jones, Burns, Ankrom, Elshire, Coffman, Howard, and Culver have refused to provide him copies, stamps, envelopes, and access to a law library, paralegal, or computer. Plaintiff states that he has "missed several Court ordered deadlines and have no way of prosecuting my

---

[2]In the original complaint Plaintiff names as Defendant "Ehlschide," whom he identifies as a "Sergent of guards" at DCDC. In the amended complaint, he names as Defendant "Elshire," whom he also identifies as "Sergent of guards" at DCDC. For the purposes of initial review, the Court will consider these as the same Defendant and will identify him as "Elshire."

complaint because the defendants here refused to provide a law library, paralegal, or computer." He states that this is a violation of the First, Fifth, Eighth, and Fourteenth Amendments.

Plaintiff also states that in April 2010 Deputy Sheriff Boung and Culver destroyed his personal property when he was being transferred to Jefferson County for a hearing. He states that this was a violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. He also states that the I.D. band was cut from his arm and he was charged $5.00 for another one although he did not remove it.

Plaintiff also avers that on July 12, 2010, a week after he mailed the original civil rights complaint, guards Murdock and McCrystal forced him to leave his cell and questioned him about a bump on his forehead. Plaintiff told them he hit his head in the shower, but they took him to Sergeant Jack Jones who told him he was going to be placed in an isolation cell for ninety days if he did not inform them who hit him. Plaintiff states that when he again stated he hit his head in the shower he was placed in an isolation cell for ten days, and his personal property was confiscated. At the disciplinary hearing, Plaintiff was not allowed to call or question witnesses. Plaintiff states that guards McCrystal, Murdock, Eskridge, Hendrick, and non-Defendants Raymer and Fleury would take the mat, blanket, and sheets out his cell. Plaintiff states that "they would conduct showers for everyone in the unit, have the Trustees strip and Buff the floor, and never give anyone recreation and only Religious reading material." Plaintiff also states that on or about July 20 and 21, 2010, guards Hendrick and McCrystal brought him a mat with the stuffing taken out. Guards Hendrick, McCrystal, and Eskridge never replaced it. Sergeant Jones saw that the stuffing was taken out of the mat and charged Plaintiff $95.00 for replacing it and

later issued the same mat without stuffing to another inmate.  Plaintiff claims these actions

violate the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

As relief, Plaintiff seeks monetary damages in the amount of $1,000,000, unspecified

punitive damages, and injunctive relief in the form of restoring his medication and transfer out of

DCDC.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity,

officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if the court determines that it is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as

frivolous where it is based on an indisputably meritless legal theory or where the factual

contentions are clearly baseless.  *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view

the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

4

allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty does not require the Court "to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  All official-capacity claims

Plaintiff sues each Defendant in his or her official capacity. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City*

*Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Plaintiff identifies all Defendants as

employees of DCDC, except for Deputy Sheriff Boung, whom he identifies as an employee of

the Sheriff Department of the City of Louisville.  Therefore, Plaintiff's official-capacity claims

against all Defendants except for Boung are, therefore, actually claims against their employer,

Daviess County, and his official-capacity claim against Boung is actually a claim against

Louisville Metro Government.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)

(stating that civil rights suit against county clerk of courts in his official capacity was equivalent

of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct

issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the

municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v.*

*City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is

designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and

thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting

*Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

Plaintiff arguably alleges a policy in his statement that he "was refused my antibacterial soap and oitment because the Istitution sells the soap at commissary and No oitments are allowed[.]" The Court must then address whether Plaintiff's harm was caused by a constitutional violation. *Collins v. City of Harker Heights*, *Tex*., 503 U.S. at 120. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). However, in order for a claim to rise to the level of an Eighth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the

existence of a "sufficiently serious" medical need. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005). Plaintiff fails to allege a sufficiently serious medical need in his complaint or amended complaint. Likewise, Plaintiff fails to allege he suffered any cognizable injury resulting from the alleged denial. Therefore, since Plaintiff's alleged harm was not caused by a constitutional violation, Plaintiff official-capacity claims related to the alleged denial of soap and ointment will also be dismissed.

With regard to all of Plaintiff's other claims, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's allegations concerning his other claims appear to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Daviess County or Louisville Metro Government, the complaint fails to establish a basis of liability against these municipalities and fails to state a cognizable § 1983 claim against them. Accordingly, Plaintiff's official-capacity claims against all Defendants will be dismissed.

**B.**     **Individual-capacity claims**

        **1.**     **Denial of medical care**

Plaintiff claims that he was denied anti-bacterial soap, ointments, and psychotropic and pain medications and was not allowed to see a doctor or psychiatrist. As indicated above, to sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Therefore, to prove a prison official is liable under

the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the

existence of a "sufficiently serious" medical need. *Miller*, 408 F.3d at 812. The prisoner must

also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of

mind in denying medical care.'" *Id*. (quoting *Farmer*, 511 U.S. at 834). While "[m]edical needs

encompass treatment for mental illness," *Davis v. Oakland County*, No. 96-1678, 1998 U.S. App.

LEXIS 7172 (6th Cir. April 7, 1998), an inmate must still allege that his mental health problems

constitute a serious medical need.

Plaintiff fails to allege a sufficiently serious medical need for the medical care that he

states was denied. In fact, Plaintiff does not even state anywhere in the complaint or amended

complaint what his medical conditions are. Moreover, Plaintiff fails to allege the denial of

medical treatment caused him to suffer any cognizable injury. Therefore, Plaintiff's individual-

capacity claims regarding his medical treatment will be dismissed for failure to state a claim

upon which relief may be granted.

2. **Personal property**

Plaintiff alleges several incidents where his personal property was confiscated or

destroyed and where he was wrongly charged for items. The Supreme Court has held that where

adequate remedies are provided by state law, the negligent or intentional loss or destruction of

personal property does not state a claim cognizable under the Due Process Clause of the

Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451

U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)). In order to

assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a

plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the

deprivation. *Parratt,* 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in

*Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt. See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, any due process challenge with respect to Plaintiff's lost property fails.

In addition, Plaintiff states that when he was processed into DCDC he "was stripped and my property confiscated under illegal search and seizure." The Fourth Amendment provides, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Plaintiff does not state a viable Fourth Amendment claim. *Hudson*, 468 U.S. at 528 n.8. In *Hudson*, the Supreme Court held that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell." *Id*. at 526. The same rationale applies to a prisoner's argument that destruction or confiscation of his property constituted an unreasonable seizure in violation of the Fourth Amendment. *Id*. at 528 n.8. Thus, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendants.

3.      **Isolation cell**

Plaintiff complains that he was placed in an isolation cell for ten days, was given a mat with the stuffing taken out, was not permitted recreation, and was permitted only religious reading. "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981)). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*, 429 U.S. at 103).

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer,* 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (citations omitted). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

As to Plaintiff's complaints about placement in an insolation cell, "'[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Plaintiff does not allege that he was denied basic human needs

while in the isolation cell. Plaintiff's complaint that he was given a mat without stuffing during this time, while likely unpleasant, does not rise to the level of an Eighth Amendment violation. *See*, *e.g*., *Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) ("Grissom neither alleged nor presented any evidence that the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm."); *Jones v. Toombs*, No. 95-1395, 1996 U.S. App. LEXIS 6545, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period.") (citing *Schroeder v. Kaplan*, No. 93-17123, 1995 U.S. App. LEXIS 18915, at *2 (9th Cir. July 7, 1995) (requiring prisoner to sleep on floor for a four-week period without use of mattress does not violate the Eighth Amendment)). Likewise, Plaintiff's complaint about lack of recreation during his assignment to the isolation cell do not rise to the level of an Eighth Amendment violation. *See*, *e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("This court has never set a minimum amount of time a prisoner must have access to outdoor recreation."); *Townsend v. Padula*, No. C/A0:0421879-RBH, 2005 U.S. Dist. LEXIS 39404, at *3 (D.S.C. Dec. 30, 2005) (finding a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation). Therefore, Plaintiff's claim concerning his placement in an isolation cell will be dismissed for failure to state a claim upon which relief may be granted.

4.      **Disciplinary hearing**

Plaintiff complains that he was not allowed to call or question witnesses during a disciplinary hearing. However, the Supreme Court has held that when the liberty interest involved merely affects the conditions under which a prisoner is housed, the due process to which an inmate is entitled does not require that the inmate be given the opportunity to call

witnesses. *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005). Therefore, Plaintiff's claims

concerning the disciplinary hearing will be dismissed for failure to state a claim upon which

relief may be granted.

**5.** **Grievances**

Plaintiff states that he filed numerous grievances which were denied by Captain Billings.

However, there is "no constitutionally protected due process interest in unfettered access to a

prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir.

2005). By the same token, a plaintiff cannot maintain a claim against a prison official based

solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances

or the failure to act' by prison officials does not subject supervisors to liability under § 1983."

*Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295,

300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional

dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's

claim is against the subjects of his grievances, not those who merely decided whether to grant or

deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's

complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to

state a claim."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the

grievance is not the same as the denial of a request to receive medical care."); *Lee v. Mich.

Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed

simply because a defendant denied an administrative grievance or failed to act based upon

information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir.

2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an

13

appeal cannot in itself constitute sufficient personal involvement to state a claim for a

constitutional violation."). Thus, any claim concerning the denial of Plaintiff's grievances will

be dismissed for failure to state a claim.

### 6. Access to courts

Plaintiff states that Osborne, Billings, Jones, Burns, Ankrom, Elshire, Coffman, Howard,

and Culver did not allow him copies, stamps, envelopes, or access to a law library, computer or

paralegal, and because of that he missed several Court-ordered deadlines in two pending civil

rights cases and has no way of prosecuting those cases. Prisoners have a First and Fourteenth

Amendment right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996). Upon

review, the Court will allow Plaintiff's access to courts claim to proceed against these

Defendants past initial review.

### 7. Fifth Amendment

The Fifth Amendment to the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise
> infamous crime, unless on a presentment or indictment of a Grand
> Jury, except in cases arising in the land or naval forces, or in the
> Militia, when in actual service in time of War or public danger; nor
> shall any person be subject for the same offense to be twice put in
> jeopardy of life or limb; nor shall be compelled in any criminal
> case to be a witness against himself, nor be deprived of life,
> liberty, or property, without due process of law; nor shall private
> property be taken for public use, without just compensation.

U.S. CONST. amend. V. Plaintiff fails to explain how the Fifth Amendment applies to his

claims. Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a

cognizable Fifth Amendment claim against Defendants. Specifically, the Court notes that to the

extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it

circumscribes only the actions of the federal government. *See, e.g., Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of municipal, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

The Court will enter a separate Scheduling Order governing the development of the claims which will be permitted to proceed and will enter a separate Order dismissing all other claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Daviess County Attorney
4414.010